IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AMY H.,**

      **Plaintiff,**

                                            **Civil Action 2:21-cv-122**
**v.**                                                **Judge Edmund A. Sargus, Jr.**
                                            **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Amy H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 20), Plaintiff's Reply (ECF No. 21), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

1

## I.     BACKGROUND

Plaintiff previously filed applications for DIB and SSI on April 7, 2014, alleging that she became disabled beginning March 30, 2014, due to multiple sclerosis, obesity, depressive disorder, and post-traumatic stress disorder. (R. at 70-71.) On March 30, 2017, both applications were denied in a decision issued by Administrative Law Judge Carrie Kerber ("ALJ Kerber"). (R. at 65-90.) ALJ Kerber concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work with certain physical restrictions. (*Id.*) ALJ Kerber also limited Plaintiff to simple, routine tasks that are not fast-paced and are repetitive day to day with few and expected changes; no strict production quotas; only occasional interaction with co-workers, supervisors and the public; and no conflict resolution, persuading others, or tandem tasks. (*Id.*) The Appeals Council declined to review ALJ Kerber's determination, and Plaintiff timely sought judicial review in this Court. (R. at 91-97; 174-183.) By Opinion and Order dated September 3, 2019, the Court affirmed the Commissioner's non-disability finding. (*See* Case No. 2:18-cv-402 at ECF No. 23.)

Plaintiff protectively filed her current applications for DIB and SSI in April 2018, alleging that she has been disabled since March 27, 2017, due to multiple sclerosis, depression, memory issues, extreme tiredness, and mental health issues. (R. at 269-76, 297.) Plaintiff's applications were denied initially in October 2018 and upon reconsideration in March 2019. (R. at 98-173.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 217-20.) Plaintiff, who was represented by counsel, appeared and testified at a video hearing held on March 9, 2020. (R. at 46-64.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) ALJ George D. Roscoe ("ALJ Roscoe") issued a decision finding that Plaintiff was not disabled within the

meaning of the Social Security Act on March 24, 2020. (R. at 7-28.) The Appeals Council denied Plaintiff's request for review and adopted ALJ Roscoe's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

ALJ Roscoe summarized Plaintiff's relevant hearing testimony:

> At the hearing, [Plaintiff] alleged that she is unable to work primarily due to severe fatigue, anxiety, and depression. [Plaintiff] alleges that she is fatigued when she wakes up and that she has a difficult time getting out of bed. [Plaintiff] also alleges that she experiences pain in her upper body and headaches. [Plaintiff] alleges that her symptoms have worsened since the prior ALJ decision. She testified that her arms and legs give out and she regularly falls. [Plaintiff] alleges that she can stand 30 minutes, walk 15 minutes, and lift 10 pounds. [Plaintiff] also alleged blurred vision. [Plaintiff] alleges difficulty concentrating and remembering.

(R. at 17.)

## III. RELEVANT MEDICAL RECORDS[1]

ALJ Roscoe summarized the relevant medical records concerning Plaintiff's multiple sclerosis impairment:

> [Plaintiff] has a long history of treatment for multiple sclerosis (See Exhibit B13F). In June 2017, she reported increased dizziness (Exhibit B12F at 7). However, she was not on any disease modifying therapy at the time. On examination, [Plaintiff]'s motor strength was full throughout, gait was normal, and cranial nerves intact. Other treatment records document normal range of motion ad strength of the extremities, no motor or sensory deficits, and steady gait (Exhibit B1F at 8). [Plaintiff] ambulated without an assistive device with a deviated gait pattern and mild imbalance (Exhibit B4F at 25).

---

[1] Because Plaintiff's Statement of Error relates only to her multiple sclerosis, the undersigned has limited the discussion of the medical evidence to this impairment.

>[Plaintiff] was evaluated by a neurologist in September 2017 (B4F at 29). On examination, her sensation was intact, strength full throughout, reflexes symmetric, and coordination normal (Exhibit B4F at 29). However, her gait was severely impaired. On follow in October 2017, [Plaintiff] complained of bilateral upper extremity pain and weakness and all over body weakness (Exhibit B2F at 1). An MRI of the brain at that time demonstrated a few small T2 hyperintense foci in the white matter of the supratentorial brain consistent with multiple sclerosis. However, there was no interval change from previous imaging in 2014 and no contrast enhancement to suggest active demyelination. An MRI of the cervical spine also showed abnormal signal in the cord at the C6-7 level consistent with demyelination, but also unchanged from a previous MRI in 2013 (Exhibit B2F at 3).
>
>Treatment records document essentially unchanged clinical objective findings on follow-up (Exhibit B4F at 73). However, [Plaintiff] reported constant thoracic pain, extending bilaterally (Exhibit B6F at 5). This was thought to be related to her multiple sclerosis. In November 2017, [Plaintiff] reported that she visits a friend almost daily to help that friend with her children (Exhibit B4F at 49).
>
>On follow-up in February 2018, [Plaintiff] exhibited a slightly wide based gait, impaired toe/heel walking, and severely impaired tandem gait (Exhibit B15F at 181). However, sensation, coordination, reflexes, and strength were intact. In March 2019, [Plaintiff] reported continued weakness and imbalance (Exhibit B14F at 93). [Plaintiff]'s mother reported that [Plaintiff] has poor sleep hygiene, often staying up until 3-4 am. She also does not exercise, does not take vitamin D consistently, and smokes a pack of cigarettes per day. On examination, sensation and strength were intact (Exhibit B14F at 96). Coordination and gait were also essentially normal. [Plaintiff] was evaluated for physical therapy in March 2019 (Exhibit B15F at 114). On examination, [Plaintiff] exhibited decreased step length bilaterally with poor foot clearance and shuffling steps. However, gait was grossly normal with visual scanning. [Plaintiff] reported significant lack of endurance and fatigue with activities of daily living. On follow-up, [Plaintiff] reported that her symptoms are worse in the winter (Exhibit B14F at 78). Her objective findings were again essentially unchanged on follow-up (Exhibits B14F at 82 and B15F at 32 and 62). Additional imaging demonstrated radiographic progression since 2017; however, [Plaintiff] was stable and improved clinically (Exhibit B14F at 83). On follow-up in December 2019, [Plaintiff] still reported some fatigue, but her energy was improved (Exhibit B15F at 29).

(R. at 17-18.)

ALJ Roscoe summarized the relevant medical source opinions as follows:

[ALJ Roscoe] has considered the medical opinions of record in rendering this decision. [Plaintiff]'s treating neurologist, Jaqueline Nicholas, M.D., concluded that [Plaintiff] is unable to work (Exhibit B11F). She noted that [Plaintiff]'s symptoms include numbness, tingling, muscle weakness, incoordination, poor balance, difficulty with thinking and memory, depression, urinary symptoms, bowel complaints, blurred vision, difficulty with speech, painful skin sensations, motor fatigue, difficulty walking, L'hermitte's sign, pathologic fatigue, anxiety, sexual dysfunction, and headaches. While [ALJ Roscoe] finds the statement of Dr. Nicholas persuasive with regard to her symptoms, her conclusions that [Plaintiff] is unable to work are not a medical opinion. Pursuant to 20 CFR 404.1527(d) and 416.927(d), this conclusion is not a medical opinion, but is, instead, an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of a case. Therefore, [ALJ Roscoe] will not evaluate this statement as a medical opinion.

James Mattingly, M.D., examined [Plaintiff] at the request of the DDD on September 16, 2018 (Exhibit B9F at 6). Dr. Mattingly concluded that [Plaintiff] can walk two out of eight hours in a day and could probably be on her feet for a combined total of three to four out of eight hours in a day. She could carry more than ten pounds on occasion, but would be limited in her ability to do anything for a long duration or repetitively.

[ALJ Roscoe] finds the opinions of Dr. Mattingly generally persuasive as they are supported by objective signs and findings upon examining [Plaintiff]. For example, Dr. Mattingly noted that [Plaintiff] was able to get on and off the examination table without difficulty. [Plaintiff] walked with a normal gait and all joints appeared normal. [Plaintiff]'s neurological examination was essentially normal with normal sensation, intact reflexes, full muscle strength, and normal motor function. She had full strength in the upper and lower extremities bilaterally. Range of motion was normal throughout the body; however, [Plaintiff] reported pain with hip range of motion. Fine fingering was normal and grip strength was intact. [Plaintiff] did report some difficulty holding onto objects.

Gary Hinzman, M.D., evaluated [Plaintiff]'s physical condition based on the evidence of record without examining [Plaintiff] on behalf of the DDD on October 17, 2018 (Exhibit B5A). Dr. Hinzman concluded that [Plaintiff] is capable of light exertion work with occasional climbing of ramps/stairs, no climbing of ladders/ropes/scaffolds, and frequent balancing, stooping, kneeling, crouching, and crawling. She must also avoid all exposure to hazards such as unprotected heights and heavy moving machinery. This assessment was affirmed upon reconsideration (Exhibit B9A).

> [ALJ Roscoe] finds the opinions of the evaluating sources less persuasive as they are not consistent with the weight of the objective and subjective evidence, which documents no new and material evidence of a significant change in [Plaintiff]'s condition since the prior ALJ decision. For example, [Plaintiff] generally reported fatigue, weakness, dizziness, back and upper extremity pain, and imbalance. However, treatment records also consistently document intact sensation, reflexes, range of motion, and strength. Coordination and gait were also essentially normal. However, other treatment records document impaired gait including slightly wide based gait, impaired toe/heel walking, severely impaired tandem gait, decreased step length bilaterally with poor foot clearance and shuffling steps. Combined with exacerbating effects of obesity, [ALJ Roscoe] finds that [Plaintiff] is limited to sedentary exertion work with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. She can never climb ladders, ropes, or scaffolds. In addition, there is some evidence that [Plaintiff]'s symptoms are worsened with temperature change; therefore, she is limited to occasional exposure to temperature extremes and humidity. In order to avoid exacerbating her headaches, [Plaintiff] can have only occasional exposure to vibration. Finally, due to imbalance and dizziness, she is limited to occasional exposure to workplace hazards such as dangerous moving machinery and unprotected heights.

(R. at 19-20.)

## IV.   ADMINISTRATIVE DECISION

On March 24, 2020, ALJ Roscoe issued his decision. (R. at 7-28.) ALJ Roscoe found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. (R.

at 13.) At step one of the sequential evaluation process,[2] ALJ Roscoe found that Plaintiff has not engaged in substantially gainful activity since March 31, 2017, the alleged onset date.[3] (*Id.*) ALJ Roscoe found that Plaintiff had the severe impairments of multiple sclerosis, obesity, depressive disorder, posttraumatic stress disorder with panic, headaches, and fatigue syndrome. (*Id.*) ALJ Roscoe further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] Noting that Plaintiff's prior claim was denied in a decision dated March 30, 2017, ALJ Roscoe dismissed Plaintiff's request for a hearing through March 30, 2017, on *res judicata* grounds and considered only the unadjudicated period beginning March 31, 2017. (R. at 10.) Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), ALJ Roscoe found that "[m]ost of the findings contained in the prior final and binding decision issued on March 30, 2017 remain applicable and are adopted." (R. at 11.) Further, he concluded that "[t]here is no new and material evidence documenting a significant change in the [Plaintiff's] condition since the prior decision." (*Id.*) Plaintiff does not challenge these conclusions here.

Before proceeding to Step Four, ALJ Roscoe set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity (20 CFR 404.[94]5 and 416.945) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except for no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional exposure to temperature extremes, humidity, vibration, and hazards (such as heights, machinery, and commercial driving); and mental limitation that she perform simple, routine tasks in a low stress environment (meaning no fast pace, strict quotas, or frequent duty changes) and involving superficial interpersonal interactions with coworkers, supervisors, and the public (meaning no arbitration, negotiation, or confrontation).

(R. at 16.)

At step four of the sequential process, ALJ Roscoe determined that Plaintiff is unable to perform her past relevant work as a nursing assistant, delicatessen worker, home health aide, and stock clerk. (R. at 21.) Relying on the VE's testimony, ALJ Roscoe concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a patcher, touchup screener or table worker. (R. at 22.) He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since March 31, 2017. (R. at 23.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors,[4] Plaintiff asserts the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ did not fully account for Plaintiff's multiple sclerosis. (ECF No. 15 at 8-12). The undersigned disagrees and concludes that the ALJ's RFC formulation is supported by substantial evidence.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her]

---

[4] On February 10, 2022, Plaintiff withdrew Issue II from her Statement of Errors. *See* ECF No. 22.

limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*.  The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted). The ALJ must also consider all medical opinions he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). "[T]here is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017).

Plaintiff complains that the ALJ found Dr. Nicholas's statement regarding her multiple sclerosis symptoms persuasive but did not accommodate them in the RFC.  Plaintiff focuses

specifically on her fatigue and suggests that the ALJ should have accounted for her need for time off task or additional breaks. In Plaintiff's view, this has resulted in an unresolved material inconsistency preventing the ALJ's path of reasoning from being traced such that reversal and remand are warranted.

Initially, there is no question that "multiple sclerosis is a progressive disease for which there is no cure" and "[t]he disease is subject to periods of remission and exacerbation." *Jones v. Sec'y of Health and Human Servs.*, No. 93-1958, 1994 WL 468033, at *3 (6th Cir. Aug. 29, 1994) (citations omitted); *accord Tuohy v. Sec'y of Health and Human Servs.*, 1994 WL 454880, at *1 (6th Cir. 1994) ("The disease [multiple sclerosis] is characterized by periods of exacerbation, in which the victim experiences acute aggravation of her symptoms, and periods of remission, in which the victim may be able to function almost normally."); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981) ("Multiple sclerosis is an incurable, progressive disease subject to [ ] periods of remission and exacerbation."). "Nevertheless, in this circuit, multiple sclerosis is not per se disabling under the social security regulations." *Jones*, 1994 WL 468033, at *3 (collecting cases).

As reflected above, the ALJ thoroughly discussed Plaintiff's treatment records relating to her multiple sclerosis symptoms and fatigue. (R. at 17-20.) In his discussion, the ALJ considered Plaintiff's treatment from June 2017 through March 2019, detailing visits, examination findings, and test results. (*Id.*) In doing so and concluding that Plaintiff was not disabled, the ALJ relied on the lack of a significant change in Plaintiff's condition since the prior ALJ decision. (*Id.*) Specifically, the ALJ noted that, while Plaintiff complained of, *inter alia*, pain and fatigue, examinations since the prior ALJ decision consistently documented intact sensation, reflexes,

11

range of motion, and strength. (R. at 17-18 citing R. at 355, 406, 1000, 1152.) Indeed, Plaintiff does not challenge the ALJ's discussion of the medical evidence.

Instead, as noted, Plaintiff limits her focus here to the issue of her fatigue. This effort is to no avail. As Plaintiff highlights and as the ALJ properly recounted, Dr. Nicholas identified Plaintiff's symptoms of motor fatigue and pathologic fatigue. (R. at 19 citing R. at 536.) Beyond this, however, Dr. Nicholas explained only generally that "[f]atigue is the most common symptom experienced by MS patients with a prevalence of 65-97%," that it "significantly impacts health related quality of life, including a negative impact on the ability to work," and can be disabling and result in patients being unable to be gainfully employed." (R. at 536.) Dr. Nicholas did not address the severity of Plaintiff's fatigue specifically.

Significantly, Plaintiff does not point to any other objective medical evidence confirming the severity of her fatigue. This is so despite the fact that Plaintiff carries the burden of proving a more limiting RFC. *O'Brien v. Comm'r of Soc. Sec.,* 819 F. App'x 409, 416 (6th Cir. 2020) (plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ") (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)). Absent some objective confirmation of the severity of her fatigue, Plaintiff simply has not met that burden here. *See Headrick v. Sec'y of Health & Human Servs.*, No. 87-1939, 1988 WL 120897, at *2 (6th Cir. Nov. 14, 1988) ("In this case there is abundant objective medical evidence of the claimant's multiple sclerosis. What is lacking, however, is medical evidence confirming the severity of her fatigue or demonstrating that her multiple sclerosis had reached a stage where it was reasonably likely to produce a degree of fatigue that could fairly be said to be disabling."); *Mannis v. Colvin*,

No. 3:12-cv-619, 2014 WL 652931, at *7 (E.D. Tenn. Feb. 20, 2014) ("Although the Plaintiff's September 2009 MRI suggests the possibility of multiple sclerosis, a diagnosis alone 'says nothing about the severity of the condition.' ") (citation omitted); *James B. C. v. Comm'r of Soc. Sec'y*, 2019 WL 1199834, at *5 n.4 (S.D. Ill. Mar. 14, 2019) ("That plaintiff suffered from fatigue as a common symptom of MS, however, tells nothing about how the symptom is debilitating for the plaintiff, or how it affects his ability to maintain competitive employment with sedentary limitations.")

In sum, reading the ALJ's decision as a whole, he considered Plaintiff's multiple sclerosis symptoms, including her fatigue, and incorporated those symptoms into his RFC. Indeed, he did so in a more restrictive fashion than had the State agency consultants who reviewed Plaintiff's file. (See R. at 111-113, 148-150.) Because the ALJ appropriately acknowledged Plaintiff's symptoms and supported his decision with substantial evidence from the record, the Court must defer to the ALJ's RFC. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his RFC determination, and the ALJ's explanation enjoys substantial support in the record. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.

1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")). Under these circumstances, the Court finds no merit to Plaintiff's statement of error.

## VII. CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which

fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:    <u>April 21, 2022</u>                        <u>/s/ *Elizabeth A. Preston Deavers*</u>
                                                                            Elizabeth A. Preston Deavers
                                                                            United States Magistrate Judge